## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **LISA MARIE STICKLE,** | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| | § | **Jury Trial Requested** |
| **JARED ALAN REAMY, Individually** | § | |
| **and in His Official Capacity as a** | § | |
| **Corrections Officer;** | § | |
| **JAMES E. CAMPBELL, Individually** | § | |
| **and in his Official Capacity as a** | § | |
| **Sheriff of Cherokee County;** | § | |
| **FRED BUTLER, Individually and** | § | |
| **in his Official Capacity as Captain of** | § | |
| **Cherokee County Jail; and** | § | |
| **CHEROKEE COUNTY** | § | |
| **Defendants.** | § | |

### I.
### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW LISA MARIE STICKLE, Plaintiff, complaining of CHEROKEE COUNTY,

JARED ALAN REAMY, Individually and in his official capacity as a Corrections Officer; JAMES

E. CAMPBELL, Individually and in his official capacity as Sheriff of Cherokee County; FRED

BUTLER, Individually and in his official capacity as Captain of Cherokee County Jail in the nature

of 42 U.S.C., §1983; 42 U.S.C. §1985; and 42 U.S.C., §1986 and in the nature of Rule 15 of the

Federal Rules of Civil Procedure. Plaintiff would respectfully show as follows:

### II.
### PARTIES

1.      Plaintiff, Lisa Stickle, is a resident of Smith, County, Texas.

2.      Defendant Jared Alan Reamy is a former Corrections Officer with Cherokee County Sheriff's department and may be served with process at his residence located at 829 ½ Kelly Street, Jacksonville, Texas 75766.

3.      Defendant James E. Campbell, Sheriff of Cherokee County, Texas may be served with process at 272 Underwood Street, Rusk, Texas 75785.

4.      Defendant Fred Butler is the current Captain with Cherokee County Jail and may be served with process at 272 Underwood Street, 83, Rusk, Texas 75785.

5.      Defendant Cherokee County which may be served with process by serving the County Judge Chris Davis at 135 S. Main 3rd Floor, Rusk, Texas 75785.

## III.
## JURISDICTION & VENUE

6.      The Complaint presents federal questions pursuant to the United States Constitution, including provisions of Eighth and Fourteenth Amendments of the United States Constitution which are asserted pursuant to 42 U.S.C., §1983; 42 U.S.C. §1985; and 42 U.S.C., §1986 to redress plaintiff's claims of deprivation of rights, privileges, and immunities by state actors while acting in their official capacities, while acting under color of state law and employment, when such rights, privileges, and immunities are secured under the United States and Texas Constitutions, and federal laws; namely, the Federal Prison Rape Elimination Act, statutory laws under the Texas Penal Codes; Texas Code of Criminal Procedures; Texas Occupation Codes; the Texas Health & Safety Codes, and the procedures as set forth in the evidence gathering process of a rape/sexual assault cases and the physical and mental evaluation of the rape/sexual assault of victims; as well as the well-established laws and decisions of the United States Supreme Court, federal courts of appeals, and

district courts.

7.      Sections 1983, 1985, and 1986 individually, singularly, and collectively afford a basis for any citizen to present a cognizable claim for relief not only against state actors if, as a result of state action, the citizen has been deprived of any rights, privileges, or immunities secured by the United States Constitution and/or by federal law; but, when two or more persons in any state or territory conspired or go in disguise on the highways or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the law; of for the purpose of preventing or hindering the constituted authorities of any state or territory from giving or securing to all persons within the state or territory the equal protection of the laws, or when any person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the section 1985 of this Title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act is committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

8.      Plaintiff maintains that the defendants named hereinabove, jointly and severally have deprived her of liberty interests, Due Process, Equal Protection rights, privileges and immunities secured under the Eighth and Fourteenth Amendments of the United States Constitution; federal and state laws; the decisions and interpretations of the laws in accordance with the United States Supreme Court, federal courts of appeals and district courts well established law prior to the complained of event, namely; the Federal Prison Rape Elimination Act, 28 C.F.R., Part 115, which provides a "Zero Tolerance of Sexual Abuse and Sexual Harassment,: (see Public Law 108-79

September 4, 2003, 10Eighth Congress; 42 U.S.C., §15601 Prison Rape Elimination Act of 2003); Texas Penal Codes §§§39.02, 39.03, and 39.04; Texas Code of Criminal Procedures; Texas Occupation Codes, Sheriffs; Texas Health & Safety Codes.

9.      While the declaratory relief provided by §1983 enables plaintiff to establish the violation of a liberty interest, due process or equal protection right, and §1985, that defendants acted in concert to deprive plaintiff os said rights, or §1986 that certain defendants having an opportunity to take corrective or preventive measure but failed to do so.  Subject to and dependent upon a ruling in plaintiff's favor upon her due process or equal protection claims for defendants' failure to abide by statutes, laws, constitutional rights, privileges and immunities secured the plaintiff enacted into law by the U.S. Congress and the Texas legislature, and/or deprived plaintiff of any other rights, privileges or immunities, the principles of pendant jurisdiction are engaged for combining remedies through §§§1983, 1985, and 1986, with relief through the plaintiff's "Intentional Infliction of Emotional Distress Claim."

10.      In accordance with the Federal Prison Rape Elimination Act, The Texas Penal Codes, Texas Code of Criminal Procedures, the Texas Occupation Codes, and the Texas Health & Safety Codes, plaintiff challenges the procedures, policies, and rules in which the Cherokee Sheriff's Department conduct their cases involving sexual assault and rape victims and the evidence gathering for such cases in which currently involved the plaintiff.

11.      The damages claimed are within the jurisdictional requirements of this Court.

12.      All conditions precedent to bring this actions have occurred and/or been performed.

13.      Venue is proper in the Tyler Division of the Eastern District of Texas since Plaintiff's claims, including asserted federal cliams, accrued in Cherokee County, Texas and/or one or more

of the Defendants resides in Cherokee County, Texas and/or is principally located in Cherokee County, Texas.

## IV.
## FACTS

14.     On August 29, 2014 Plaintiff, Lisa Stickle, (hereafter referred to as Stickle) was taken into custody and booked into the Cherokee County jail. Stickle had been placed on probation for a prior criminal offense and as a result of a probation violation was sentenced to serve jail time.

15.     Stickle was sentenced to 30 days in the Cherokee County jail, but was ultimately released on September 11, 2014. During her incarceration, Stickle was repeatedly harassed verbally and ultimately was physically assaulted by correctional officer Reamy on more than one occasion.

16.     Witness statements taken during the investigative process by the Texas Rangers indicate that Reamy was harassing Stickle as early as September 6th and even posted a note against the glass asking if she wanted to fuck.

17.     Cherokee County jail maintained video surveillance in the halls and additionally in the cells of the inmates.  Jail officials allowed a hyper-sexed atmosphere to flourish within the confines of the jail. Female inmates were encouraged and rewarded for flashing the cameras with extra break time and additional smoking privileges within the cells. This type of activity was known and accepted, thus proving that this incident was just some random episodic event, but was directly linked to a policy or custom which existed inside the jail,

18.     On September 8, 2014, Stickle left her cell to accept and or make a phone call. Upon arriving back into her cell area, Reamy groped her breast as she re-entered the cell.

19.     On September 9, 2014, Stickle and the other inmates were taken to the visitation area

by the guards.  On the return trip, Reamy took Stickle out of line and entered a book closet. Once inside, Reamy closed the door, turned out the lights, and began to physically assault Stickle.  Reamy lifted Plaintiff's top fondled and sucked her breast and placed his hand inside her pants rubbing on her vagina. Stickle on more than one occasion requested Reamy to stop, but to no avail. Reamy did stop when he heard the keys of another jailer dangling.

20.     Stickle told her cellmates of the event and immediately filed a formal complaint with the Jacksonville Police Department upon being released on September 11, 2014. Jacksonville Police reached out to the jail, which started a formal investigation led by the Texas Rangers. Numerous interviews and statements were conducted and ultimately Reamy resigned and was later indicted by a Cherokee Grand Jury.

21.     One of the interviewees was a fellow jailer named Paula Green who told Texas Ranger Davis that Reamy was a womanizer and that he routinely made comments about women during inmate visitations. In addition, Reamy had an affair with an inmate which he claimed he knew prior to her incarceration.

22.     All of these bad acts by Reamy and other correctional officers were within the knowledge of the jail officials, who either endorsed the behavior or at a minimum turned a blind eye to it even though it was known to occur on a frequent basis.

23.     As a detaining facility, Cherokee County had a duty to its detainees and inmates to provide them with not only a safe environment, but also an environment free from coercion and unwanted sexual harassment and assault. Individuals within Cherokee County had the opportunity to put an end to this over-sexed premise but recklessly ignored it to the detriment of those individuals housed within the facility.

24.     Cherokee County failed to properly screen their potential job applicants, particularly Reamy, who at the time of his hiring was non compliant with the minimal training requirements promulgated by the Texas Commission on Jail Standards.

25.     Cherokee County failed to properly train its employees in regards to handling inmates of the opposite sex, and further failed to train it's employees on proper monitoring within the jail.

26.     Cherokee County failed or was negligent in supervising it's employees. Proper monitoring of Reamy would have most likely resulted in this event not ever occurring. In addition, the county failed to stop or monitor the pervasive culture of having women detainees expose themselves on camera in exchange for inappropriate benefits. These activities were captured on camera and could have easily been monitored.

27.     Cherokee County's callous disregard to the rights and welfare of its detainees created the very environment where Stickle was sexually assaulted by one of the detaining officers. Further, this was not the first allegation of sexual misconduct made against an employee of the jail, thus putting the County on notice and triggering an additional duty to be diligent in its hiring practices, training practices, and most importantly monitoring and supervising it's employees.

## V.

## PLAINTIFF'S EIGHTH AMENDMENT AND DELIBERATE INDIFFERENCE CLAIMS

28.     The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted [U.S. Const. Amend. 8]. The United States Supreme Court has held that the use of excessive force against a prisoner is a violation of the Eighth Amendment, expounding further that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment...forbidden by the Eighth Amendment. [Whitley vs. Albers,

475 U.S. 312, 319 (1986) (Quoting Ingraham vs. Wright, 430 U.S. 651, 670 (1977); Hudson vs. McMillan, 503 U.S. 1, 5-6 (1992)].

29.     Plaintiff claims herein that defendants violated her right to be free from cruel and unusual punishment, and due process rights, by failing to show proper procedures of the law in her sexual assault and rape, and excessive use of force.

30.     Excessive use of force claims involve two prongs: (1) An objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) a subjective prong under which the plaintiff must show that "the officials acted with a sufficiently culpable state of mind." Hudson, supra, 503 U.S. at 8.

31.     The objective component of an excessive force claim is "contextual and responsive to contemporary standards of decency." Id. at 8.

32.     The subjective element of an excessive force claim "turns on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley 475 U.S. at 320-321.

33.      Sexual abuse is repugnant to contemporary standards of decency and plaintiff's allegations of sexual assault satisfies the objective component of her Eighth Amend. Excessive use of force claim, because it has been held that sexual assault/abuse of a prisoner by a corrections officer has no legitimate penologicial purpose, other than the invasion of plaintiff's bodily integrity and the sick gratification of Officer Reamy.

34.      Officer Reamy's behavior was egregious, extreme, outrageous, and was designed to inflict emotional distress and cause physical harm and injury, which was left untreated, examined or evaluated by any physician and/or psychologist until at a later date.

35.     Plaintiff suffered physical and mental injuries, as categorized by the Texas Penal Codes and Eighth Amendment to the United States Constitution; inasmuch as the sexual assault of her body is repugnant to the conscience of mankind. Furthermore, the Texas Penal Code, §71.02 provides that a person commits an offense if, with the intent to establish, maintain, or participate in a combination, he commits or conspires to commit one of several enumerated offenses including "sexual assault." Combination is defined as "three or more persons who collaborate in carrying on criminal activities." [Tex. Penal Code, §71.01 (a)]. In the instant matter, evidence shows that intent existed from the facts that prove the combination element; e.g. admonishing plaintiff to treat the matter as if it never happened, and stating that you have no idea the things that happen in here. Such statements, admonitions, and threats were made by defendants while acting in their official capacity and under color of state law and/or employment. These acts, conduct, and threats were attempts to hinder the legal process and investigation, preventing physical and mental evidence to surface for the case of sexual assault against plaintiff.

36.     Pursuant to Texas Penal Code, §39.03 (a) (3), a public official commits a crime of official oppression if, while acting under color of his office or employment, he intentionally subjects another to sexual harassment; and, sexual harassment means in accordance to §39.03 ©
as "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise of enjoyment of any right, privilege, or immunity, either explicitly or implicitly and in the instant case matter, plaintiff never provided and/or did she desire to have any sexual relations with Officer Reamy.

37.     Furthermore, pursuant to the Supreme Court decision in Monell vs. N.Y. Dept. Of Social Services, a municipality or county may only be held liable when an action taken pursuant to

official municipal or county policy or custom caused the constitutional violation. Monell, 98 S. Ct. 2018; Collins vs. City of Harker Heights, Tex. 112 S. Ct. 1961.

38.     Plaintiff avers that the Cherokee County Jail (1) maintains policies that the jails are liable for the protection of each inmate housed in its jail, and that they must conduct investigations and provide safety and health practices; (2) each named defendant knew or should have known of the existence of such policies and customs; (3) that because of their failure to adequately train, monitor, hire, and supervise it's employees  resulted in her being sexually assaulted by an improperly trained and supervised employee; thus, violating plaintiff's  Eight   and Fourteenth Amendment rights, privileges, and immunities.

39.     See also [Pistrowski vs. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)]. 5th Circuit Court of Appeals defined "official policy or custom" as (1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or, (2) A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. [Johnson vs. Moore, 958 F.2d 92, (5th Cir. 1992) (Quoting Bennett vs. City of Slidell, 735 F. 2d 861, 862) (5th Cir. 1984)]. Here, Cherokee County employees acted with deliberate indifference to plaintiff's health, safety, physical and mental injuries suffered and endured from the hands of a fellow officer, who was inadequately hired, trained, and who had a known history within the jail of being a womanizer and had even had an affair with a detainee.

40.     The Fourteenth Amendment imposes at a minimum, the same duty the Eighth Amendment imposes; more precisely, that persons in custody have the established right to not have

officials remain deliberately indifferent to their serious medical needs. [Wagner vs. Bay City, Texas 227 F.3d 316 (5th Cir. 2000)]. Because of Defendant Reamy's criminal acts, conduct, and the carrying out of an indecent and immoral sexual assault upon plaintiff without her consent; because Cherokee County's failure to hire, train, monitor, and supervise their correctional officers and staff in cases involving rape, sexual assault, and assault and battery, plaintiff suffered physical and mental tortures, which resulted in her personal body parts to become violated and mental inflictions of mental pains, anguish, stress, sleep deprivation, sleepless nights, nightmares caused by the event.

## VI.

## PLAINTIFF'S DUE PROCESS & EQUAL PROTECTION OF THE LAW CLAIM

41.     The Prison Rape Elimination Act (PREA) passed by the U.S. Congress in 2003, applies to all detention facilities, including federal and state prisons, jails, police-lockups, private facilities, and immigration detention centers; and specifically recognizes that sexual assault in detention can constitute a violation of the Eighth Amendment. [42 U.S.C., §15601 (13); U.S. Const., Amend. 8]. PREA requires that facilities adopt a "Zero Tolerance" approach to this form of abuse. Even before PREA was passed, courts agreed that rape or sexual assault of prisoners by correctional officers violates the Eighth Amendment, as well as the Fourteenth Amendment. [Farmers v. Brennan, 511 U.S. 825 (1994)].

42.     The Eighth Amendment forbids cruel and unusual punishment, and it has been interpreted to prohibit excessive use of force and guard brutality, as well as unsanitary, dangerous or overly restrictive conditions. In Hudson vs. McMillan, 503 U.S. 1 (1992), the court held that a guard's use of force violates the Eighth Amendment when it is not applied in good faith effort to maintain or restore discipline; but instead, to maliciously and sadistically cause harm.

43.    Excessive force is defined as meaning: "Any physical contact by a guard that is meant to cause harm, rather than keep order." [Siglar v. Hightower, 112 F.3d 191 (5th Cir.)].

44.    This is coupled with Section 1985, which provides a civil remedy against conspiracies to commit a listed series of acts, ranging from forcible interference with processes of justice to deprivation of civil or constitutional rights, particularly those protected by the Fourteenth Amendment, [Thiboutot vs. Maine, 448 U.S. 1 (1980)]. The Fourteenth Amendment, ratified in 1868, is the nation's most far-reaching constitutional provision on civil rights. The amendment prohibits the denial to any person of the equal protection of the laws. Following the civil war, Congress enacted several civil rights statutes to give force to the newly ratified Fourteenth Amendment, to dispel any doubt as to its constitutionality. Also, the Eighth Amendment protects plaintiff's right to procedural due process under the Fourteenth Amendment clauses against "unnecessary and wanton infliction of pain that is inflicted by officials' abusive conduct, or authority that causes harm, and injuries that were caused intentionally, unjustifiably, brutal and offensive to human dignity.

45.    Plaintiff has suffered a physical and mental injury as categorized by the Texas Penal Codes and the Eighth Amendment, as being maliciously and sadistically inflicted, which caused physical and psychological injuries when she was intentionally assaulted sexually by a public official acting under color of office/employment for the self-gratification, without the consent and/or permission of the plaintiff.

46.    Because of the denial of Due Process and Equal Protection of the Laws, during a criminal investigation case which involved plaintiff as being the victim in this case; the defendants failed to follow proper legal procedure in the investigation and evidence gathering process, in which

the assaulting officer was arrested and convicted on a much later date of the sexual assault of plaintiff.

47.     The Fourteenth Amendment's due process and equal protection clauses limit the state's power to act, but does not place an affirmative obligation upon the state to act; it does not guarantee "certain minimal levels of safety and security." DeShaney, 489 U.S. at 195. Although the general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals, it does have a duty and obligation to reasonable health, safety, security and basic human needs that violate the cruel and unusual punishment clause of the Eighth Amendment; and the courts have recognized two exceptions to this rule: (1) substantive due process obligation; and, (2) procedural due process obligation.

48.     Furthermore, the due process clause requires that a law be specific enough to (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) establish determined guidelines for law enforcement. Also, the Supreme Court has recognized that a state has a valid interest in protecting victims of sexual abuse from needless harassment, humiliation, and unnecessary invasions of privacy. [Michigan vs. Lucas, 500 U.S. 145, 150 (1991)].

49.     Whatever the scope of the "rights, privileges, powers, and immunities," the sexual harassment provision of the official oppression statute proscribes conduct that at minimum, contains the following elements: (1) an official's use of his official position; (2) to intentionally engage in conduct of a sexual nature or attempt to procure sexual favors; (3) which he knows is not welcomed by the recipient; intending submission to which to be a term or condition of the recipient's or another person's enjoyment of something of value to that person. [See Texas Penal Codes, sections 1.0007 (41) and 39.04].

50.     Because of the charge, conviction and sentence of defendant Reamy of the Texas Penal Code, specifically, Sec. 39.04 Violations of the Civil Rights of Person in Custody; Improper Sexual Activity with Person in Custody, any argument against him at this point would be an unnecessary extension of pages and would crowd this court's docket; therefore, plaintiff begins with all named defendants in this action.

51.     The County of Cherokee, Texas is a local state government entity which is operated through the election and/or appointment of commissioners who make the policies in which runs, operates in which the county jail is operated on a day-to-day basis and in its policy making for the county jail the county commissioners further allocate funding to the jail in which is used for the hiring, training, education, and specialized training procedures of its correctional officers, as well as for the purchasing of equipment; e.g. weapons, officer safety gear, and for the safety and protection of those in which the jails incarcerate.

52.     Because of Cherokee County's  policy makers' deliberate indifference to the safety, security and health of the prisoners of the Cherokee County Jail,  Plaintiff suffered  direct physical and mental injuries of being sexually assaulted  at the hands  of an officer who has been known to be a womanizer and a rule breaker.

53.     In the Cherokee County Jail, there  are several closed circuit television cameras in the jail which are linked to the monitors  located  in the dispatch area of the jail which are linked to the monitors  located  in the  dispatch  area  of the jail for the  purpose  of maintaining security and to monitor the safety of its prisoners.

54.     The jail's policy and procedure manual specifically instructs jailers to give notification to the opposite sex/gender before entering the area; and furthermore, jailers are

prohibited from the removal of female prisoners without another officer's presence.

55.     In the instant case matter, Officer Reamy, who was acting in his capacity as Corrections Officer, escorted Stickle into a secure room alone for the purpose of obtaining sexual gratification.

56.     In order to hold a government entity liable for acts of a no policy making employee, the plaintiff must allege and prove that: (1) a policy or custom existed; (2) the government policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation [Meadowland Home for Children, Inc. Vs. Gunn, 81 F.3 521, 532-33 (5th Cir. 1996)].

57.     During the course of Reamy's employment, Reamy was to be instructed to the rules, regulations and policies of jail restrictions as to the opposite sex/gender, and was provided a Jail Policy and Procedure Manual to read in its entirety to become familiar with the rules, regulations, and policies of the jail and therefore, the Sheriff and Captain, Campbell and Butler were charged with keeping the discipline, safety, security, and training and education of the officers in and under his supervision.

58.     Therefore the Cherokee County  and its Commissioners (policy makers) are liable for the injuries, sufferings, and constitutional violations committed against her by one of its employees, who created a danger [Clendon vs., City of Columbia, 258 F3 432 (5th Cir. 2001)], which because of the policy makers inadequate carrying out and ensuring the carrying out of policy increased the chances of plaintiff and other receiving such treatment from an undisciplined employees.

59.     In the instant case matter, plaintiff asserts that there was a continual and deliberate indifference to her health, safety, and security since the county knew it was running a sexually

charged facility and video surveillance as well as common knowledge supported that theory.

60.     Both Campbell and Butler  knew of the existence and possibility of such indecent and immoral sexual acts being committed from the plain and obvious deficiencies of Reamy's work   but failed to take corrective and preventive measures to prevent such acts from ever occurring, when the acts were highly predictable when Reamy never received any proper training and/or disciplinary actions  for his unconstitutional, unlawful, and unprofessional work habits and obeying the laws and was therefore deliberately indifferent to plaintiff's health, life, safety, security and injuries.

**VII.**
**INTENTIONAL INFLICTION OF EMOTIONAL STRESS CLAIM**

61.     Webster's II New College Dictionary (2001 ed.) describes "horror" as meaning: (1) A strong and painful feeling of fear and repugnance.   (2) Intense dislike.  (3) One that causes horror. (4) Something unpleasant, disagreeable, or ugly.  (5) Intense nervous depression or anxiety. [See also Estate of Trentadue vs. U.S. 560 F.Supp. 2d 1124].  In the instant case matter, plaintiff has suffered a physical and mental injury, as categorized by the Texas Penal Codes, The Eighth Amendment to the United States Constitution (as being repugnant to the conscience of mankind) from a sexual assault incident upon her body by a public servant while acting under color of state law or employment.

62.     Without consent of plaintiff, she was fondled, groped, had her breast sucked, and her vagina rubbed while in a room she should have never been in.

63.     Each of the defendants' action caused plaintiff to feel embarrassed, humiliated, fearful, cry and have countless nightmares, sleepless nights, anxiety, depression, worthlessness, and other forms of degradation.

64.     It is plaintiff's contention and assertion that the named and titled defendants herein

violated her Eighth amendment right, privilege, and immunity of being free from cruel and unusual punishments and inflictions of pain,  suffering, fear of life, mental stress, emotional anxiety, and other suffering; by failing to provide the protections and safeties required of defendants, and after placing plaintiff under their care and custody.

## VIII.
## SYNOPSIS OF PRISON RAPE AND ENACTMENT OF PRISON RAPE ELIMINATION ACT

65.     The United States Congress enacted *PRISON RAPE ELIMINATION ACT*  because of this country's lengthy history of prison rape and sexual assault imposed on prisoners, by both guards and inmates alike.  The purpose of this act was to remove any doubt that such acts would no longer be tolerated; essentially, making it clear that there would be "Zero Tolerance" for rapes and sexual assaults of prisoners.  Additionally, federal funding for armor, equipment, vehicles, and other federally subsidized programs would also provide financial resources for training and technical assistance; in order to educate and train officials, agents and employees in the prevention of sexual assaults on prisoners.  By receiving federal assistance, defendants inherently waive their right to immunity (qualified, or otherwise) when they have knowledge of the act, and fail to prevent or remedy the problem; prior to depriving plaintiff of her constitutional rights.

66.     Indeed, the Texas Legislature mandated further that prison and jail officials set guidelines and policies consistent with Prison Rape Elimination Act; including, but not limited to the Texas Penal Codes, Texas Code of Criminal Procedures, Texas Occupation Codes, Texas Health & Safety Codes, Texas Rules of Civil Procedure, and Texas Rules of Evidence.

67.     Relative to the instant matter, defendant displayed total disregard for both federal and state legislative enactments, criminal law, civil law, and administrative laws.  As detailed above,

their actions and omissions constitute absolute disregard for the very rights they were sworn to uphold, enforce, and/or prevent.   Sadly, these defendants were the prime actors in engaging in precisely the type of behavior forbidden by Prison Rape Elimination Act.

## IX.
## PRAYER

(§1983 Remedies-Declaratory/Injunctive Relief)

68.      **WHEREFORE**, in addition to the remedies previously requested, Plaintiff further requests the following relief claim hereinafter referred to as U.S. Constitutional Claims:

69.      **Declaratory relief** stipulating that these defendants violated plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution, and federal laws pursuant to Title 18 U.S.C. §241 and §242; and Title 42 U.S.C., §1983, §1985, §1986 while these defendants conspired to hinder, conceal, and prevent plaintiff from filing her constitutional claims against the arbitrary and sadistic violations which caused serious bodily injury and permanent psychological and emotional damage to plaintiff; while defendants were acting under color of state law/employment, when each defendant knew beyond a reasonable doubt that their actions and conduct of hindering, preventing, and concealing evidence for the purpose or preventing plaintiff from filing her civil rights complaint, and by hiring an unqualified person (Reamy ) in the first place.

70.      A declaration that the acts and omissions described herein violated plaintiff's rights, privileges and immunities under the Eighth and Fourteenth Amendments to the United States Constitution, laws of both federal and state governments (the State of Texas); as well as Administrative Rules, Regulations and Policies, and Standards that govern the behavior of jail staff and officials, as promulgated in their own rules, policies, and standards that govern jails within the

State of Texas.

[Plaintiff further requests a ***Jury Trial*** on all issues triable by jury is demanded.

Monetary Damages

71.     **WHEREFORE**, subject to and dependent upon a ruling in Plaintiff's favor, upon one of the United States Constitutional Claims presented herein above, pursuant to §1983, plaintiff furthers the following monetary damages.

72.     **Punitive damages** in the amount of $1 ,000,000.00 against each defendant, in their official capacities, for each defendant's intentional and purposeful intent to cause and deprive plaintiff of her constitutional rights under the "Due Process and Equal Protection of the Laws Clause," when each defendant acted under color of state law and/or employment, knowing that their acts and conduct was illegal, and deprived plaintiff of the safeguards and protections guaranteed and secured under the United States Constitution.

73.     Compensatory damages in the amount of $3 ,000,000.00 against Defendant Reamy for his intentional, purposeful, and harmful conduct, by intentionally and sadistically causing injury to plaintiff by sexually assaulting her, and which resulted in pain, suffering, and permanent psychological and emotional trauma; evidenced by anxiety and depression.

74.     **Compensatory Damages** against all other Defendants' in their official capacities when knowing that an illegal, immoral, and unconstitutional act of sadistic conduct had occurred by a fellow officer, and when having an opportunity to correct, remedy, or prevent further violations from happening, failed and refused to take appropriate action. Had any remedial action been taken prior to the assault on Stickle in regards to the hyper charged sexual overtones within the jail, this occurrence likely would not have happened.

75.     Defendants be ordered to pay all costs associated with this claim, as well as medical expenses; including but not necessarily limited to filing fees, attorney fees and expenses, future medical treatment and hospital costs, and addressing of mental health issues arising from defendants' acts; past, present, and future. Any other relief that this court deems just and equitable under the law.

Respectfully submitted,

**MAYO MENDOLIA & VICE, L.L.P.**
110 N. College Ave., Ste. 101
Tyler, Texas 75702
903-747-3422
903-747-3436 fax


By:   _/s/ T. Heath Chamness_

**J. KEITH MAYO**
State Bar No.: 00794251
jkm@mmvllp.com
**T. HEATH CHAMNESS**
State Bar No.: 24040667
thc@mmvllp.com


**ATTORNEYS FOR PLAINTIFF**